# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In Re:<br><br>Mark Christian,<br><br>                 Debtor. | Chapter 13<br><br>Case No. 19-56979 - SMS |
| Nationstar Mortgage LLC d/b/a Mr. Cooper,<br>its successors or assigns,<br><br>                 Movant,<br><br>V.<br><br>Mark Christian, Debtor, and Jennifer C.<br>Christian, Codebtor, and Mary Ida<br>Townson, Chapter 13 Trustee,<br><br>                 Respondents. | Contested Matter |

### NOTICE OF ASSIGNMENT OF HEARING

PLEASE TAKE NOTICE that Nationstar Mortgage LLC d/b/a Mr. Cooper, has filed a Motion for

Relief from Stay  and related papers with the Court seeking an order granting relief from the automatic

stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion for Relief from

Stay  in United States Bankruptcy Courthouse, Richard B. Russell Federal Building, 75 Ted Turner Drive,

SW, Atlanta, GA 30303, Courtroom 1201 at 2:00 P.M. on February 25, 2020.  Your rights may be

affected by the Court's ruling on these pleadings.  You should read these papers carefully and discuss

them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you

may wish to consult one.)  If you do not want the Court to grant the relief sought in these pleadings, or if

you want the Court to consider your views, then you and/or your attorney must attend the hearing.  You

may file a written response to the pleading with the Clerk at the address stated below, but you are not

required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address for the Clerk's Office is:  U.S. Bankruptcy Court, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Room 1340, Atlanta GA 30303.  You must also mail a copy of your response to the undersigned at the address stated below. In the event a hearing cannot be held within thirty (30) days from the filing of said Motion, as required by 11 U.S.C. Section 362, Movant, by and through counsel, waives this requirement and agrees to the next earliest possible date, as evidenced by the signature below. If a final decision is not rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period.

The undersigned consents to the automatic stay remaining in effect with respect to Movant until the court orders otherwise.

Dated:   January 28, 2020

Shapiro Pendergast & Hasty, LLP


_/s/ Lucretia L. Scruggs_
Lucretia L. Scruggs
Georgia Bar No. 371008
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: (770) 220-2535
Fax: (770) 220-2665
lscruggs@logs.com

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In Re: | Chapter 13 |
| Mark Christian, | Case No. 19-56979 - SMS |
| Debtor. | |
| | |
| Nationstar Mortgage LLC d/b/a Mr. Cooper, its successors or assigns, | |
| Movant, | Contested Matter |
| V. | |
| Mark Christian, Debtor, and Jennifer C. Christian, Codebtor, and Mary Ida Townson, Chapter 13 Trustee, | |
| Respondents. | |

## MOTION FOR RELIEF FROM STAY
## AND MOTION FOR RELIEF FROM CODEBTOR STAY

COMES NOW Nationstar Mortgage LLC d/b/a Mr. Cooper, its successors or assigns, ("Movant"), by and through its undersigned counsel, and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362(d) and 1301 FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Mark Christian (hereinafter "Debtor") filed this proceeding under Chapter 13 of the Bankruptcy Code on May 4, 2019 and remains in possession of the subject property under a plan of arrangement to be confirmed by this Court.

3.

Movant is the holder or servicer of a loan secured by certain real property now or formerly known as 624 Victoria Lane, Woodstock, GA 30189, in Cherokee County, GA.  Copies of the Security Deed and Assignments (if applicable) are attached hereto as Exhibit "A".  A copy of Note is attached hereto as Exhibit "B".

4.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due. As of January 24, 2020, the estimated post-petition deficiency is $3,047.79 and consists of the December 1, 2019 through January 1, 2020 payments at $1,040.85 each, attorney fees and costs in the amount of $1,031.00, less the suspense balance in the amount of $64.91.  An additional payment will come due February 1, 2020 and on the 1st day of each month thereafter until the loan is paid in full.

5.

As of January 24, 2020, current unpaid principal balance due under the loan document is $97,565.31.  According to the Debtor(s) Schedule A/B, the property is currently valued at $175,000.00.

6.

Based upon the foregoing facts, there is a lack of adequate protection in the subject property.  Movant shows that good cause exists to grant relief from the automatic stay of 11 U.S.C. § 362 and the CoDebtor stay of 11 U.S.C. § 1301.

7.

Movant has incurred attorney's fees and cost as a result of filing this motion. These fees and cost are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

8.

Movant requests that upon entry of an Order granting relief from the automatic stay of Section 362 and the CoDebtor stay of 11 U.S.C. § 1301 said Order also instruct the Chapter 13 Trustee to cease disbursements on Movant's Proof of Claim.

WHEREFORE, Movant respectfully requests:

a)  That the automatic stay under 11 U.S.C. § 362  and the CoDebtor stay of 11 U.S.C. § 1301 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, effectuating a foreclosure sale and gaining possession of the Property; to contact the Debtor and CoDebtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

b)  That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

d) That Movant be permitted to offer and provide Debtor with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor;

e) Movant prays, that in the event of an Order granting relief from the automatic stay of Section 362 said Order also instruct the Chapter 13 Trustee to cease disbursements on Movant's Proof of Claim.

f) For such other and further relief the Court deems just and proper.

Dated:  January 28, 2020

Shapiro Pendergast & Hasty, LLP


   /s/ Lucretia L. Scruggs
Lucretia L. Scruggs
Georgia Bar No. 371008
211 Perimeter Center Parkway, N.E.
Suite 300
Atlanta, GA 30346
Phone: (770) 220-2535
Fax: (770) 220-2665
lscruggs@logs.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the within Notice of

Assignment of Hearing was served, together with a copy of the Motion for Relief from Stay filed

in this bankruptcy matter via electronic mail notice to parties, and their representatives, who are

ECF Filers and Consent Users, or by depositing a copy of same in the United States Mail,

postage prepaid, all other interested parties at the indicated addresses as follows:

Mark Christian
624 Victoria Lane
Woodstock, GA 30189

Jennifer C. Christian
12060 Cavell St
Livonia, MI 48150

Susan S. Blum
Ginsberg Law Offices, PC
blumlawfirm@gmail.com

Mary Ida Townson
Chapter 13 Trustee
courtdailysummary@atlch13tt.com


Dated January 28, 2020                    Shapiro Pendergast & Hasty, LLP


                                          _/s/ Lucretia L. Scruggs_____
                                          Lucretia L. Scruggs
                                          Georgia Bar No. 3710008
                                          211 Perimeter Center Parkway, N.E.
                                          Suite 300
                                          Atlanta, GA 30346
                                          Phone: (770) 220-2535
                                          Fax: (770) 220-2665
                                          lscruggs@logs.com

THIS DEED IS BEING SENT FOR RE-
RECORDING TO ADD THE WORDING
"ATTORNEY IN FACT" TO THE SIGNATURES
FOR JENNIFER C. CHRISTIAN

Deed Book 10737 Pg 82
Filed and Recorded 8/3/2009 9:14:13 AM
28-2009-025445
Intangible Tax $354.00
Penalty $0.00 Interest $0.00
Patty Baker
Clerk of Superior Court Cherokee Cty, GA



**KANE, THOMAS & BROWN, LLC**
241 HERITAGE WALK
WOODSTOCK, GA 30188

WHEN RECORDED, MAIL TO:
BRAND MORTGAGE GROUP
6224 SUGARLOAF PARKWAY, STE 200
DULUTH, GEORGIA 30097

This instrument was prepared by:
BRAND MORTGAGE GROUP
6224 SUGARLOAF PARKWAY, STE 200
DULUTH, GEORGIA 30097
678-226-7557

Deed Book 10766 Pg 146
Filed and Recorded 8/28/2009 11:09:29 AM
28-2009-028348
Intangible Tax $0.00
Penalty $0.00 Interest $0.00
Patty Baker
Clerk of Superior Court Cherokee Cty, GA

State of Georgia

[Space Above This Line For Recording Data]

# SECURITY DEED

MIN:

THIS SECURITY DEED ("Security Instrument") is given on July 29, 2009.
The Grantor is MARK CHRISTIAN AND JENNIFER C CHRISTIAN, AS JOINT TENANTS WITH FULL RIGHTS OF
SURVIVORSHIP, ("Borrower")
and whose address is 624 VICTORIA LANE, WOODSTOCK, GEORGIA 30189.

This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns), as grantee. MERS is organized and existing under the laws of Delaware, and
has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

BRAND MORTGAGE GROUP, LLC, ("Lender")
is organized and existing under the laws of GEORGIA,
and has an address of 6224 SUGARLOAF PARKWAY, STE 200, DULUTH, GEORGIA 30097.

Borrower owes Lender the principal sum of ONE HUNDRED SEVENTEEN THOUSAND EIGHT HUNDRED TWENTY-SIX
AND NO/100, Dollars (U.S. $117,826.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument
("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on August 1, 2039. This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this
Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For
this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and
the successors and assigns of MERS, with power of sale, the following described property located in CHEROKEE County, Georgia:

SEE ATTACHED EXHIBIT "A"

Parcel ID Number:

which has the address of    624 VICTORIA LANE
WOODSTOCK, GEORGIA 30189, ("Property Address");

FHA Georgia Security Deed with MERS – 4/96                                                    Amended 2/01

IDS, Inc.                                  Page 1 of 6          Borrower(s) Initials MC JC

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in

---

paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

---

FHA Georgia Security Deed with MERS – 4/96                                                                 Amended 2/01

IOS, Inc.                                       Page 3 of 6                      Borrower(s) Initials   *Mc.  JC*

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) No Waiver. If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) Mortgage Not Insured. Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. Reinstatement. Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal

or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

---

FHA Georgia Security Deed with MERS – 4/96                                        Amended 2/01

ICS, Inc.

Page 5 of 6

Borrower(s) Initials _MC  JC_

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Adjustable Rate Rider
☒ Planned Unit Development Rider ☐ Growing Equity Rider ☒ Other: Exhibit A Waiver of Borrower's Rights Rider

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ -Witness        _____ -Witness

_____ (Seal)          Jennifer Christian by Mark her attorney in fact (Seal)
MARK CHRISTIAN            -Borrower          JENNIFER C CHRISTIAN BY MARK            -Borrower
                                             CHRISTIAN, HER ATTORNEY IN FACT

STATE OF GEORGIA, _____ Cherokee _____ County ss:

Signed, sealed and delivered in the presence of the two attesting witnesses:

_____
Unofficial Witness

_____ County
Notary Public,
State of GEORGIA

FHA Georgia Security Deed with MERS – 4/96                    Amended 2/01
IDS, Inc.                        Page 6 of 6

MIN: 100587800260070234

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 29th day of July, 2009, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to BRAND MORTGAGE GROUP, LLC ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**624 VICTORIA LANE**
**WOODSTOCK, GEORGIA 30189**

(Property Address). The Property is a part of a planned unit development ("PUD") known as:
**VICTORIA STATION**

(Name of Planned Unit Development Project)

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          Jenifer Christian by M____ her attorney
MARK CHRISTIAN           -Borrower        in fact  (Seal)
                                          JENNIFER C CHRISTIAN BY      -Borrower
                                          MARK CHRISTIAN, HER
                                          ATTORNEY IN FACT

FHA - MULTISTATE PUD Rider                Page 1 of 1                      7/91
DS, Inc.

Exhibit "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOTS 755 AND 756
OF THE 21ST DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA, BEING LOT 112
AND PART OF LOT 113, UNIT I, VICTORIA STATION, AS SHOWN ON PLAT OF SURVEY FOR
ROBERT J. HUGHES AND TAMMY W. HUGHES BY WIKLE LAND SURVEYING, DATES
MARCH 4, 1993, AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT AN IRON PIN LOCATED ON THE NORTH LINE OF LAND LOT 756, WHICH
IRON PIN IS LOCATED SOUTH 89 DEGREES 58 SECONDS 10 MINUTES EAST 10.00 FEET
FROM THE NORTHWEST CORNER OF LAND LOT 755, AS MEASURED ALONG THE NORTH
LINE OF LAND LOT 756; THENCE SOUTH 89 DEGREES 58 MINUTES 10 SECONDS EAST
LONG THE NORTH LINE OF LAND LOT 756 A DISTANCE OF 140.19 FEET TO AN IRON PIN;
THENCE SOUTH 00 DEGREES 17 MINUTES 10 SECONDS EAST 90.84 FEET TO AN IRON PIN;
THENCE SOUTH 39 DEGREES 30 MINUTES 00 SECONDS WEST 131.50 FEET TO AN IRON
PIN: THENCE NORTH 86 DEGREES 48 MINUTES 00 SECONDS WEST 188.43 FEET TO AN
IRON PIN LOCATED ON THE EASTERLY RIGHT OF WAY OF VICTORIA LANE; THENCE
NORTHWESTERLY ALONG THE NORTHEASTERLY RIGHT OF WAY OF VICTORIA LANE
67.86 FEET TO AN IRON PIN: THENCE NORTH 51 DEGREES 57 MINUTES 10 SECONDS EAST
212.35 FEET TO AN IRON PIN LOCATED ON THE NORTH LINE OF LAND LOT 756 AND THE
POINT OF BEGINNING.

## CLOSING ATTORNEY'S AFFIDAVIT

Date:            July 29, 2009

Georgia Grantor:   **MARK CHRISTIAN**
                 **JENNIFER C CHRISTIAN**

Lender:          **BRAND MORTGAGE GROUP**
                 **6224 SUGARLOAF PARKWAY, STE 200**
                 **DULUTH, GA 30097**
                 **678-226-7557**

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR

Signed, Sealed and delivered in the presence of:

_____
-Witness

_____
Notary Public

**MARK CHRISTIAN**                    (Seal)
                                    -Grantor

**JENNIFER C CHRISTIAN BY MARK**      (Seal)
**CHRISTIAN, HER ATTORNEY IN FACT**   -Grantor

_____ (Seal)
                        -Grantor

_____ (Seal)
                        -Grantor

SUSAN BONDS
NOTARY
EXPIRES
GEORGIA
December 16, 2012
PUBLIC
CHEROKEE COUNTY

IDS, Inc.

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non judicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____    _____
Notary Public                Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan though foreclosure.

_____  7/29/09    Jennifer Christian by _____ her attorney in fact  Date 7/29/09
MARK CHRISTIAN          Date      JENNIFER  C  CHRISTIAN  BY  MARK
                                  CHRISTIAN, HER ATTORNEY IN FACT

IDS, Inc.

(Page 1 of 3)

Copy

Deed Book **13250** Pg 30
Filed `04/10/2015 10:15 AM
28-2015-010431
Patty Baker
Clerk of Superior Court Cherokee Cty, GA

Recording Requested By: Nationstar Mortgage
When Recorded Return To: DOCUMENT ADMINISTRATION, Nationstar Mortgage 8950 CYPRESS WATERS
BLVD, COPPELL, TX  75019

**CORPORATE ASSIGNMENT OF SECURITY DEED**

Cherokee, Georgia
**SELLER'S SERVICING #:** ███████ "CHRISTIAN"

**MIN #:** ███████    **SIS #: 1-888-679-6377**

Date of Assignment: March 16th, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BRAND MORTGAGE
GROUP, LLC, ITS SUCCESSORS AND/OR ASSIGNS at P.O. BOX 2026, FLINT, MI  48501
Assignee: NATIONSTAR MORTGAGE LLC at 4000 HORIZON WAY, IRVING, TX  75063

Executed By: MARK CHRISTIAN AND JENNIFER C CHRISTIAN, AS JOINT TENANTS WITH FULL RIGHTS OF
SURVIVORSHIP  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BRAND
MORTGAGE GROUP, LLC
Date of Security Deed: 07/29/2009 Recorded:  08/03/2009  In Book/Reel/Liber: 10737 Page/Folio: 82 as Instrument
No.: 28-2009-025445 ReRecorded 08/28/2009  in Book/Reel/Liber: 10766 Page/Folio: 146 as Instrument No.:
28-2009-028348, ReRecorded 08/28/2009  in Book/Reel/Liber: 10766 Page/Folio: 146 as Instrument No.:
28-2009-028348  In the County of Cherokee, State of Georgia.

Property Address: 624 VICTORIA LANE, WOODSTOCK, GA  30189

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $117,826.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR BRAND MORTGAGE GROUP,
LLC, ITS SUCCESSORS AND/OR ASSIGNS
On March 16th, 2015

By:_____
WILLIAM VIANA, Assistant Secretary

WITNESS :

Valencia Metcalf

WITNESS

Copy

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On March 16th, 2015, before me, ERIC TODD RITTMUELLER, a Notary Public in and for Dallas in the State of Texas, personally appeared WILLIAM VIANA, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

ERIC TODD RITTMUELLER
Notary Expires: 10/09/2017

ERIC TODD RITTMUELLER
Notary Public, State of Texas
My Commission Expires
October 09. 2017

(This area for notarial seal)

MIN: **100587809269070234**

**Multistate**

# NOTE

July 29, 2009

**624 VICTORIA LANE**
**WOODSTOCK, GEORGIA 30189**
(Property Address)

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.
"Lender" means **BRAND MORTGAGE GROUP, LLC** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED SEVENTEEN THOUSAND EIGHT HUNDRED TWENTY-SIX AND NO/100** Dollars (U.S. **$117,826.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FIVE AND ONE HALF** percent (**5.500%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the **1st** day of each month beginning on **September 1, 2009**. Any principal and interest remaining on the **1st day of August, 2039**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at

**BRAND MORTGAGE GROUP**
**6224 SUGARLOAF PARKWAY, STE 200**
**DULUTH, GEORGIA 30097**
or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$669.00**.
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

---

**FHA Multistate Fixed Rate Note - (10/95)**
**VMP-1R** (0210).02
IDS, Inc.

Page 1 of 3

Borrower(s) Initials MC JC

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Graduated Payment Allonge        ☐ Growing Equity Allonge        ☐ Other (specify)

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **FIFTEEN** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent (**4.000%**) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

---

**FHA Multistate Fixed Rate Note - (10/95)**
**VMP-1R** (0210).02
IDS, Inc.                                    Page 2 of 3                        Borrower(s) Initials  MC  JC



**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
MARK CHRISTIAN                    -Borrower

Jennifer Christian by Mark Christian, her attorney in fact _____ (Seal)
JENNIFER C CHRISTIAN BY MARK      -Borrower
CHRISTIAN, HER ATTORNEY IN
FACT

Pay to the order of FRANKLIN AMERICAN MORTGAGE COMPANY

Without Recourse this 29 day of July , 2007.

BRAND MORTGAGE GROUP, LLC

By: Stephanie Kennedy
    STEPHANIE KENNEDY
Its: SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY Michele Sjolander
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

Pay to the order of Bank of America, N.A.

without recourse
FRANKLIN AMERICAN MORTGAGE COMPANY

Amy McKeon
AMY MCKEON
COLLATERAL TEAM LEAD

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (9210).02
26, Inc.                            Page 3 of 3